Case number 24-1137, Andrew Berzanskis et al. v. FCA US LLC. Arguments not to exceed 15 minutes per side. Mr. Boxler, you may proceed for the appellant. Good afternoon. Good afternoon, your honors, and may it please the court. Brandon Boxler on behalf of Appellant FCA, and I would like to reserve three minutes for rebuttal, please. Very well. The 15 arbitration agreements at issue contain delegation clauses that require an arbitrator to decide threshold arbitrability disputes. Waiver is one such arbitrability dispute, as this court held in JPD. Therefore, the district court erred in reaching and resolving the waiver issue, even if plaintiffs had properly raised it below. The court can vacate the order below for that reason alone, just as it vacated the order in Hilton v. Midland funding a couple years ago for the same reasons. If the court reaches the issue of whether FCA waived its arbitration rights, it should hold that there was no waiver here. Two years ago, the Supreme Court explained in Morgan v. Sundance that waiver is the intentional relinquishment of a known right. The question, then, is what did FCA do when it gained knowledge that it had a right to compel 18 plaintiffs in this MDL to arbitration? And what FCA did was move to compel arbitration. I think the district court felt that that was just implausible, that, you know, you've been around the block a few times, and it's clear that some contracts have arbitration clauses. I think that's right, Judge White. That was the reasoning that FCA should have known that there may be arbitration rights. I think the words that Judge Lawson used was that there are standard arbitration agreements that consumers sign when buying or leasing agreements. But the record refutes that assumption. The arbitration agreements in this record are not the same. They contain different delegation clauses, different terms. They define words differently. They're controlled by different state law. One arbitration in the record for Plaintiff Voss even requires mediation as a precondition to arbitration. So it's just not true that FCA has some sort of... If there's a class action, there's going to be a range. Why didn't you just at one point say, you know, as a preliminary matter, we need these contracts so we can see which ones have arbitration clauses or don't? Or just say, well, the court should know and the plaintiff should know that we're pretty sure some of these will have arbitration clauses and we're going to require arbitration in those clauses. I would say two things. First is that, as Judge White, you just explained, some plaintiffs would have these agreements and some don't. And so litigation in this NBL was going to proceed no matter what. And second thing I would say is it's not really a... We're not aware of any case or any authority and plaintiffs haven't appointed any where that's been a requirement to preserve potential arbitration rights. And if the court were to go down that road, I think it would be in tension with Morgan v. Sundance, where the Supreme Court said you can't have bespoke procedural rules in the arbitration context. So adopting some sort of rule that if you think you might have arbitration rights, you have to go at the first status conference and say, hey, we might discover these one day. Sotomayor, why didn't you figure out who was subject to arbitration before you filed a blanket motion to dismiss? The discovery had just gotten underway at the time of the motion to dismiss. So we didn't know who from what. And as the court knows, we had a 21-day deadline to move to dismiss. And we had good arguments under 12b-6 for why a lot of the claims weren't arbitrable. And again, Judge White, some of the plaintiffs had arbitration agreements and some didn't. So filing that motion to dismiss was kind of a protective step, as the second certain said in the Sweater v. Case. And I'll also say with that motion to dismiss, we did not move to compel. We moved to compel before there was a decision on the motion to dismiss. So the case is that plaintiff's site where a party has gotten a second bite of the apple, wait to see what happened with the motion to dismiss, move to compel, and if there was an adverse ruling. Those don't apply here. Well, you got your ruling before the court heard the motion, though. Before the court heard the motion. But we filed the motion, and it was fully briefed before there was a decision on the motion to dismiss. You litigated the case for six months before you raised arbitration. How do you distinguish this case from Johnson's Associates v. H.L. Operating, which I think is very similar to this case? Johnson Associates, the defendant, knew its arbitration rights at the start. It was a party to the contract. And that's true for a lot of the cases where this court has held waiver. And even in all the cases where this court has held waiver, the defendant was a party to the contract. You say because you have third-party rights to these arbitration agreements that somehow that distinguishes it? That's right. You're asserting third-party rights. We are asserting the ability of a non-signatory to these arbitrations. The matter is either subject to arbitration or not. And the fact that you're a signatory or non-signatory, I don't see what makes much of a difference. It's critical because we didn't have copies of these agreements. You didn't have copies. But it's common knowledge that dealers, auto dealers, often have arbitration contracts when they sell cars. And you guys make the cars. Your dealers commonly, I mean, I know it. I mean, customers know it, that the dealers do this. So I would think the manufacturers of the cars would know that their dealers often do this. And you say, well, I had no idea that any of these customers may have arbitration agreements. I mean, it just doesn't cut water, really. Well, a little nuance with that, Judge Griffin. Our position is we didn't know which consumers had. All right. Still, you need to – I mean, in Johnson, I debated whether arbitration should be an affirmative defense that ought to be asserted in the answer. And I ended up writing no. It's just one of the factors to be considered, whether you, in your answer, asserted the right to arbitration as an affirmative defense. Here, I guess you never even filed an answer, did you, because you're – We did. You did. We did eventually, and we asserted arbitration. But you didn't assert arbitration in the answer either. We did. Oh, you did? Yes, Your Honor. After there was a ruling on the motion to dismiss, we filed an answer in that asserted arbitration. Oh, six months later, after you litigated for six months. Right. Okay. Getting back to my other question, other than the fact that your client is not a signatory to the arbitration agreements, what else distinguishes this case from Johnson & Associates? I think that's the key piece. There are other, you know, litigation conduct. I think Johnson involved a counterclaim. But I think the key case that distinguishes this from all others that have found a waiver is that there was no knowledge at the time that we moved to Clendon. We did not know which consumers had agreed to arbitration and which hadn't. You knew some of them did. Some of them did. Good. You should have known. I guess you should have known. How about that? Even if you claim no actual knowledge, isn't that you should have known there were arbitration agreements here with a lot of these plaintiffs? Isn't that sufficient? Or why not? It's not actionable. I mean, what good is a defendant saying, I think I might have a potential right for some of these defendants because we couldn't move to Compel because we didn't have a copy of the contracts. We didn't know which plaintiffs had agreed, which ones hadn't. We didn't have copies of the agreements in order to even perform that analysis. And I would remind the Court that the plaintiffs... You didn't have any ability during that six-month period to get these contracts? That's correct, Judge Griffin. Why? Because we are... You did not even schedule depositions or discovery to find out these arbitration agreements until months after you were doing everything else in the case, right? No, Judge Griffin. That's not correct. Okay. Did you do it at the outset of this litigation? We did, Judge Griffin. So when discovery opened, we filed discovery requests on plaintiffs. And as plaintiffs admit on page 22 of their brief, we waited a month and a half before we went to the third-party dealerships and sent subpoenas to them. So plaintiffs who were parties to these contracts did not provide them in response to their initial disclosures, didn't provide them in response to our discovery requests, didn't attach them to the complaint. We're not parties to these contracts. We have no ability to get them. There's no evidence that we had any ability to get them. There's no agency relationship between us and the independent third-party dealerships. We don't have the ability to go out and demand these documents from third-party dealerships with a phone call. We had to engage in third-party discovery and send subpoenas to these dealerships in order to get the contracts in order to determine whether we had arbitration rights, analyze those contracts, and determine who agreed and who hadn't. So it's difficult for some of the arguments that we hear about delay when plaintiffs are the ones who are parties to these contracts, didn't give them to us. In response to discovery requests, initial disclosures, we had to go out and engage in third-party discovery. And yes, that took some time, but we sent those. You moved to produce these documents from the plaintiffs and they refused to give them to you or what? That is correct, at least within the... They don't keep their contract. Sure. They might not have had copies. That might be a reason why they didn't provide them. But the point remains that they didn't provide them to us, despite initial disclosure obligations, discovery requests. And so, yeah, a couple months after we engaged in the Rule 26-F conference and discovery opened, we had to send out subpoenas to get copies of the agreements. And then there's no dispute that once we got copies of the agreements, we promptly moved to compel arbitration. So basically, there was very little argument on this, right, because you didn't know what the court was going to do? That's right, Judge, right. Why didn't you file a motion for reconsideration? A couple reasons, one of which is de novo review. And so the ability to come up to this court and get it. Litigation was proceeding in the meantime, and so we wanted to get this court's eyes on it as soon as possible. But, yeah, you're right, Judge White. Plaintiffs never once argued waiver below, and I think that's because the facts here just don't support waiver. They never disputed below that FCA promptly moved to compel as soon as it got copies of these arbitration agreements and learned its rights. How do you – what about Speerle? How do you distinguish that case? Sure. So Speerle, General Motors found copies of arbitration agreements during discovery, like we did here, but they didn't do anything about it. They continued to litigate. They never once moved to compel as to any plaintiff, named plaintiff or in absent class members. The only time that they brought up their arbitration rights was when opposing a motion for class certification long after discovery has closed. So once we learned our rights, undisputed, we promptly moved to compel arbitration long before discovery closed, and Speerle, General Motors sat on those rights, which is why it's consistent with Johnson Associates, with Schwebke, with the other cases where this court has found waiver, where the defendants knew their rights, sat on them, did nothing, litigated, then tried to raise arbitration later in proceedings. Here, we learned our rights. We promptly moved to compel. But wasn't there language in that opinion that – I guess the manufacturer said they learned during discovery, and the court's response was, given the ubiquitousness of arbitration agreements, the manufacturer must have known earlier in the litigation that at least some plaintiffs may be subject to the agreements, and it should have made reference to potential arbitration earlier in the proceedings. Right. And I think that's – that, again, goes back to – that wasn't the basis for the court's holding. It wasn't that. It was kind of an atmospheric explanation for why there was waiver. And actually, the court in that case applied abuse of discretion review because it was in the 23F context, and here it's de novo because we're dealing with a motion to compel arbitration. But we're aware of no requirement, and we looked and plaintiffs have identified none, where to protect an arbitration right that you think might exist, you have to tell the court at a status conference or otherwise. Here, as soon as we learned about the right, we moved to compel arbitration. We could not have moved to compel arbitrations any sooner because we didn't know who was subject to arbitration and what the terms of the agreements were. And as far as JPD goes, you distinguish that case based on the delegation clause? So the holding in – the holding in – JPD involved the question of the Supreme Court's Howsam case, which kind of – there's language in there that says waiver is an issue for arbitration. JPD said, no, we actually construe that language as waiver of a contractual requirement, and so the delegation clause at issue – so they put waiver in the context of presumptively an issue for the court, is what JPD held, presumptively for the court. But here, even if there were that presumption under JPD, there are delegation clauses in all these contracts that require an arbitrator to decide the issue of arbitrability. So that presumption that the court identified in JPD has been overcome, just as this court held unanimously in Hilton v. Midland Funding. Which is unpublished? Unpublished. Yes, Your Honor. Just for my own interest, how does the arbitration of 18 of the plaintiffs affect the total class action status? Those 18 are out of the class? Is that it? How does that work? If their claims were arbitral and they can't proceed in court, then yes, those 18 would be out of the class. They couldn't be class members. They're all named plaintiffs seeking to represent classes in their respective states. So they would be gone. Some of the 18 plaintiffs are the sole proposed class representative for certain states, but others are joint with an individual who has not been subject to a motion to compel arbitration. They would be. When a class is certified, arbitration is not one of the issues that's decided? Is that it? I guess it could arise. I mean, it arose in the Spirley case, where General Motors attempted to raise arbitration as a reason for why the predominance requirement wasn't satisfied. So it could arise in that context. Because to determine which plaintiffs have agreed to arbitration, which haven't, which can proceed in court, which can't, you have to conduct these individual inquiries based on the unique language of contracts. I'm getting this. Was your arbitration issue even more untimely because you didn't raise it at the certification of the class stage? There's been no, there hasn't even been a motion to certify yet. It hasn't even been certified. Yeah, we're way early. Well, at least at the time of this, the motion to compel is filed, we're way early in proceedings. Okay.  Thank you, Your Honors. Good afternoon. Good afternoon. May it please the Court, my name is Dennis Leinhart from the Miller Law Firm, and I appear today on behalf of the plaintiffs' appellees. The rule for determining whether a party has waived arbitration rights is straightforward. The court must decide whether that party has taken actions that are completely inconsistent with any reliance on an arbitration agreement. The district court found that FCA committed a waiver by filing a motion to dismiss that challenged the merits of plaintiffs' claims and which sought an immediate and total victory in the case. The district court relied on this court's opinions in both United States, XREL, DORSA v. America, and Solo v. United Parcel Services to find that filing such a motion constitutes waiver. The fact that the motion to dismiss was not yet ruled on when FCA sought to compel arbitration does not change the analysis. The test focuses on the actions FCA has taken and whether they are inconsistent with arbitration rights. FCA should not benefit by the fact that the district court did not rule on the motion until later in the year. But these are the facts. And you have a 21-day window for filing a motion to dismiss. You've asked plaintiff for the documents. You didn't get them. You then, on a timely basis, seek it from the dealers. And you get the documents. You promptly look at them. You find out that there are 18 clauses that cover it. And you file your motion. Where's the waiver in that? Yes, Your Honor, this case specifically is very unique in that this is a multi-district litigation. So plaintiffs, in this case, first filed their complaints, which identified their dealerships of purchase, in March and April of 2022. Then the cases were consolidated in the Eastern District of Michigan before Judge Lawson. And Judge Lawson held a status conference in October 14th of 2022. He established initial deadlines for filing and challenging consolidated pleadings. And plaintiffs filed their consolidated complaint in November 4th, 2022, before FCA issued any discovery requests, before there's any evidence in the record that FCA asked the dealerships to produce these contracts. The parties then participated in a Rule 26-F conference in November 22nd, 2022. And not until December 15th, 2022, roughly four days before filing its motion to dismiss on the merits, did FCA issue discovery requests to plaintiffs. And these discovery requests were not limited to whether they have arbitration agreements or just seeking the sales documents. They issued literally thousands of discovery requests. This was when? December what? They issued the discovery request December 15th of 2022. Fifteen? Yes, that's correct. Filed their motion to dismiss on the merits, as to all plaintiffs, on December 19th, 2022, four days later. And then in January of 2023, began to issue third-party subpoenas to dealerships. I believe they issued 180 third-party subpoenas to dealerships and other entities like insurance companies. The deadline for filing the motion to dismiss, that came from the status conference? Is that what it is? Yes, Your Honor. The status conference, they didn't raise the fact that they thought they had arbitration defense. And so Judge Larson, when he established these deadlines and stuff, did not know arbitration might be in the mix. Is that right? That's correct, Your Honor. So is your argument that when they should have raised the issue first is probably the first time they're in court with the judge? And I can see, putting my place in Judge Larson's place, I'd want to know about it right away. And before I schedule everything else, let's get arbitration figured out one way or the other. And they didn't do it. Yes, Your Honor. And there's a number of opportunities the FCA had to raise this issue, and they failed to. So I mentioned the plaintiffs filed their complaints in March and April 2022. FCA did not ask the plaintiffs in the subsequent months for their sales contracts. There's no evidence in the record that they asked those dealerships for the sales contracts. After consolidation, we had the initial status conference in October 14th. FCA failed to raise the issue. FCA failed to raise the issue after plaintiffs filed the complaint again in November 2022, did not ask plaintiffs for their sales contracts while they were drafting their motion to dismiss. The parties had the Rule 26F conference on November 22nd. FCA did not raise the issue. FCA submitted with plaintiffs a joint case management report and discovery plan on December 19th, 2022, to set future deadlines for the case. No mention of arbitration issues. And FCA also failed to raise the issue in the joint status report, which the parties filed February 8th, 2023, close to two months after it's filed its motion to dismiss. And finally, the court held another status conference on March 13th, 2023. Again, FCA raised no arbitration issues. It was not until May 1st, 2023, more than a year after plaintiffs first identified their dealerships, six months after the court's initial status conference, five months after discovery began, and four months after filing its motion to dismiss on the merits that FCA filed its motion to compel arbitration. Now, the district court relied mostly on the DORSA and SOLO authority regarding filing a motion to dismiss on the merits, but this case is also very similar to, as Judge Griffin mentioned, the Johnson Associates case that you sat on the panel for. It's also very similar to another decision that you issued, Judge Griffin, the Schwab-Key v. United Wholesale Mortgage case from earlier this year. The panel in Schwab-Key determined that defendant had waived its arbitration rights by waiting seven months before moving to compel, failing to raise arbitration as an affirmative defense, participating in a discovery conference, filing a joint discovery plan, and serving discovery requests. The same is true here. FCA did all of this and failed to raise the arbitration issue. What do you do about the delegation clause? The – so JDP, the clause in JDP simply referred the matter of the computation of the threshold that was necessary to a master, basically. It didn't have any clauses that gave the arbitrator or referee whatever authority to decide issues of arbitrability or anything like that. And then you have cases like Rent-A-Center that make it clear that the parties can agree to arbitrate these threshold issues of arbitrability, enforceability, the scope of it. So what do you do about the fact that this has a clause that delegates issues of enforceability to the arbitrator? Yes, Your Honor. So the ruling in JPD, which is a published decision, set the standard that waiver by litigation conduct is a presumptive issue for a court to decide after closely considering the Supreme Court's decision in Howsam. FCA relies on this Hilton case, which came out a few years later, an unpublished case, which did not discuss JPD whatsoever, did not discuss JPD's analysis of the Howsam language. It is presumptively an issue for the court on a clean slate.  But other cases make it clear that you can delegate that issue to the arbitrator. So how do you deal with that? So I think the Ninth Circuit's opinion in Martin v. Souta is directly on point with what our position is here. Not only did Martin v. Souta agree with the Sixth Circuit's decision in JPD, but that case involved a delegation clause, and it specifically analyzed that. The Ninth Circuit explained that the delegation clause did not show an intent that arbitrators decide the litigation conduct issue to overcome the presumption to the contrary. The same is true here. The relevant language in the arbitration agreements that plaintiffs have in their documents do not include any agreement to delegate all gateway issues, such as waiver by litigation conduct. It delegates some issues, such as scope, enforceability, but waiver by litigation conduct is, by its nature, outside the terms of— Well, I think as the district court ruled in its opinion, and as we're discussing today, the question was not whether FCA can enforce the arbitration agreement. And if that was the issue, then the delegation clause would likely come into play. It is. I mean, they said, Judge, wait, we have an arbitration clause here, and we want to enforce it. And the judge says, no, you can't enforce it because you've done X, Y, Z. So isn't that a question of the enforceability? I don't believe so, Judge White. Our opinion would be the enforceability, as it would be laid out in an arbitration provision that the parties, or at least plaintiffs and the dealerships, agreed to, would be which entities can enforce this contract. Can plaintiffs invoke it? Can the dealerships? Can FCA? Any other third parties? Whether one of those parties took steps in court in front of a judge that were completely inconsistent with its right to enforce it. Now, with the allegation here that one of those parties took a position in court that was completely inconsistent. Right. And I think the way JPD reconciles this, as well as Martin v. Suda, is that there are different kinds of waiver. And if the parties wanted to include waiver by litigation conduct or waiver by inconsistent right as part of the delegation clause to an arbitrator, that has to be clear and convincing in the language of the contract, which just isn't in these provisions. The term waiver, if it does appear at all, is just simply waiver. And as JPD held, that can refer to just failing to meet a precondition to invoking arbitration. Mr. Boxer mentioned that one of the contracts requires mediation first before compelling arbitration. If that party had failed to invoke the mediation clause, then they would have waived their ability to invoke arbitration. What's the clause in Martin? So apologies for the delay. In Martin, the delegation clause stated, quote, All determinations as to the scope, enforceability, and effect of this arbitration agreement shall be decided by the arbitrator and not by a court. And the Ninth Circle went on to say that that was not broad enough to include waiver by litigation conduct. I'd like to touch real quick on the knowledge issue. FCA's main defense in this case is that they do not have knowledge, and there are some questions to that effect. I think Judge White, you sold my thunder a little bit, quoting Spearley v. General Motors, which was issued four months ago. The full quote is, Given the reality, along with the ubiquitousness of arbitration agreements and transactions, such as that of a saleable vehicle, we find it difficult to believe that the first time GM was aware that at least some plaintiffs may be subject to arbitration agreements was two and a half years after the plaintiffs filed the original complaint. The same is true here. Setting aside the absurdity of FCA and automotive companies in general trying to enforce arbitration provisions that it claims it doesn't even know exist, FCA has long been aware that some FCA dealership contracts include arbitration provisions. We cite seven cases in our brief where FCA itself filed motions to compel arbitration based on similar arbitration language years before this case even commenced. FCA surely knows that these arbitration provisions commonly exist, and as the district court stated, it taxes credulity to suggest FCA was not aware of these agreements. As FCA have said, we think that we probably have arbitration agreements here, so we want to make sure that the court understands that we're not going to proceed one bit further until we know about every single arbitration agreement that's out there. Your Honor, I think FCA had an obligation to raise the issue as soon as it knew that it was an issue that could affect the litigation, which in our view is immediately after plaintiffs filed their case and identified their dealerships. Now, it could have raised the issue to the district court, and the district court could have said, I'm not going to hold things up. You're going to have to file your motion to dismiss one way or the other on this date, and if that had been the case, then this waiver argument would be different. But FCA did not raise the issue with the court, did not ask plaintiffs for the contracts. You didn't raise any waiver issue. We did not, no, Your Honor. But court decided this sua sponte. It did, yes. Did FCA have any opportunity in the district court to counter that, to say, wait, no, we haven't waived this issue? Judge Lawson did ask FCA at the hearing on the motion to compel arbitration for its position as to why it waited so long, and FCA's position was at that hearing is the same as it is here, which is we need to issue third-party subpoenas to dealerships to get these contracts. But I think as Judge Lawson held in his opinion, and the same is true here, there's just no evidence in the record, no declaration from FCA, that they couldn't get these contracts from dealerships informally, that they ever asked plaintiffs to produce them before filing a motion to dismiss, that they couldn't raise the issue with the court. I have no idea that waiver was at issue. And they had no opportunity to argue this delegation clause, right? I mean, it just wasn't before the court. I think they knew the waiver was an issue in general, based on the case law, that they need to act on its rights immediately. But as your honors asked FCA before, they could have filed a motion for reconsideration with the district court, put all of this in front of the district court. They failed to do so. So I don't think, in addition that this is de novo review, I think that the fact that this was a sua sponte ruling does not assist FCA in this case. Thank you. Any further questions? Thank you, counsel.  Rebuttal. Three minutes rebuttal. Thank you, Judge Griffin. And Judge White, I wanted to start where you left off, that the word waiver was never mentioned below until we got the order. Judge Lawson did ask a question about, hey, why did it take you so long to file this motion to compel? Never once used the word waiver. Mr. Leinart was at that hearing, and when he got up after Judge Lawson asked that question, he didn't argue waiver. So that's, if there's concern about the, we're getting criticism for not submitting a declaration with detailed timelines, that's because it wasn't an issue. We didn't have an opportunity to fully brief this below. You've got the opportunity now, so, and it's de novo review, is it not? It is, but we can't supplement the record, change the record. For example, there have been subsequent motions to compel filed in this MDL because we have continued to conduct discovery, continue to file and find other arbitration agreements that are applicable. And in those motions briefing, waiver has come up. Plaintiffs have raised waiver, and we've been able to file examples of arbitration for arbitration agreements that we found that weren't signed. And we said, hey, that's why we haven't moved to compel all the plaintiffs. The judge has granted some of those motions, right? That's right, Judge White. When we've had an opportunity to more robust briefing below. That's right. I also want to address the delegation clause issue. If the court looked at the Martin decision that Mr. Leinart raised, the court went through a full analysis of does this language in the arbitration agreement overcome the presumption that the issue is for the court. And so that just confirms that a delegation clause can overcome the presumption. Tonight's circuit in Martin held that it wasn't good enough. This court looked at a very similar arbitration clause in the Hilton case, which included the word enforceability, just like the one in Martin, and held that that word enforceability is enough. The arbitration agreements in this record are even broader. They say all arbitrability disputes. And sometimes they go on to say including enforceability and otherwise. But they're broader than the one in Martin and in Hilton v. Midland funding. Mr. Leinart talked about Dorsa, Solo, Johnson, Associates, Swiebski. All those cases involved defendants who were parties to the contract. And so, of course, the defendants knew at the start of litigation what the contract said. They had a copy of it. They could analyze it. They knew their arbitration rights. Here we didn't. It's undisputed that we did not have copies of these agreements whenever this litigation started. Undisputed that we did not get copies of the arbitration agreement until we went out and conducted third-party discovery to get the agreements. Undisputed that once we got the agreements, we promptly moved to compel as soon as we learned our arbitration rights. So the cases there with Leinart are very different. The other thing I would want to say is there was some talk in Mr. Leinart's discussion to the court about we could have conducted discovery sooner. No, we couldn't have. Rule 26D says you cannot engage in discovery until you've had 26F discovery conference. That discovery conference happened on November 22nd. Discovery started promptly after that. And we first tried to get these from plaintiffs with discovery requests. We didn't get those a month and a half later. That's when we tried and sent the subpoenas to the third-party dealerships in trying to uncover what rights, if any, we had. When we discovered it, we promptly moved to compel. Therefore, there was no waiver. We asked the court to vacate the decision below. Any other questions? No, thank you. Thank you, Your Honor. The case will be submitted.